Mrs. Evelyne M. May v. Ogden and Stansbrough, Executors.

No. 5104.

MRS. EVELYNE M. MAY, wife et al., *v.* OGDEN AND STANSBROUGH,
Executors.

The question in this instance is, whether the plaintiffs, as the particular joint legatees of the
Hapaca plantation, are entitled to the revenues thereof from February, 1867, to the time
of its delivery to the said legatees in September, 1873.

The second clause of article 1626, R. C. C., provides that "the particular Legatee can take
possession of the thing bequeathed, or claim the proceeds or delivery thereof, only from
the day the demand for the delivery was formed, according to the order herein before
established, or from the day on which that delivery was voluntarily granted to him."

It is admitted in this case that there is no express bequest of the revenues accruing prior to
delivery; that no judicial demand was made for the delivery; and that no corporeal
delivery was made until September, 1873; but plaintiffs rely on what they call a con-
structive delivery by the executors. Even if it were conceded that a constructive
delivery can be made by executors, it is on record that by a special agreement with
plaintiffs, the right to claim such constructive delivery was waived by said plaintiffs. It
follows that under the provisions of the above cited article of the R. C. C., the revenues
of the Hapaca plantation accruing before delivery, can not be successfully claimed by
plaintiffs.

APPEAL from the Thirteenth Judicial District Court, parish of
Tensas. *Hough,* J. *E. D. Farrar & E. H. Farrar,* for plaintiffs
and appellants. *Mayo & Spencer,* for defendants and appellees.

HOWELL, J. This is a controversy between the executors of the last
will of John Perkins, Sr., and two of the legatees under said will, in
which the following two questions as stated by plaintiffs' counsel, are
involved, to wit:

*First*—The right of Mrs. Evelyne M. Perkins and Miss Evelyne
Bailey, as the particular joint legatees of the "Hapaca plantation,"
to the revenues thereof from February, 1867, to the time of its
delivery to the said legatees in September, 1873.

*Second*—The right of Mrs. Evelyne Perkins to an amount of $2000·
a year for ten years, to date from the testator's death, which occurred
on fifteenth of December, 1866.

The portions of the will (dated eleventh of June, 1866) directly
involved, are the following:

"V. I hereby give, devise and bequeath to Mrs. Evelyne M.
Perkins, my daughter-in-law, and to her daughter, Miss Evelyne
Bailey, and the whole to either surviving the other, at my death, all
that portion of the northwest corner of my Somerset estate, situated
on Mill and Palmyra or Vidal Bayous, known as the Hapaca place, and
now in lease-hold possession of Mr. Nolan, together with all the past
and present due from said Nolan—said Hapaca being estimated at
about two thousand acres.

"XX. * * * * * That my executors shall have the manage-
ment and control thereof (all the estate), until all my debts are paid
and the legacies fully discharged, and that delivery shall be made to·

the legatees of the particular property devised and bequeathed to them as soon after my death as practicable.   *   *   *   *   *   *   *   *

" *Codicil Second—I.*   Whereas in my said will I devised the Hapaca place, containing about two thousand acres, to my daughter-in-law, Mrs. Evelyne Perkins, I now impose as a condition of said devise that neither ferryboat nor bridge, from the mouth of Mill Bayou down its stream, shall be allowed or be permitted to be erected or established, if it can be legally prevented. I also give and bequeath to the said Mrs. Evelyne M. Perkins, in addition to what is devised and bequeathed to her in my said will, the sum of $2000, to be paid to her annually for ten years, and to be a charge upon the Somerset estate— the Hapaca place being under lease which will not terminate until the end of that period."

In other clauses of the will and codicils, the testator made many legacies of particular sums of money, some of which were imposed on the " Somerset estate," in Louisiana, described in the will as containing (including the "Hapaca place") seventeen thousand four hundred acres, some on the " Oaks," the testator's residence in Mississippi, and some not specially on any property. After the date of the will, and prior to the death of the testator, the lease to Nolan was canceled, and the rents, or a large portion thereof due by him, were relinquished or remitted.

The executors are of opinion that Mrs. Perkins is entitled to either the rents or the annuity, but not to both. They insist that, upon a proper construction of the will, she is entitled only to the annuity, and of this opinion was the judge *a quo*, from whose decree the plaintiffs have appealed.

There seems to be no serious contest as to the annuity which was adjudged to Mrs. Perkins, and we have only to determine whether or not she and her daughter are entitled to the revenues or rents of the " Hapaca place," bequeathed to them prior to its actual delivery.

The second clause of article 1626, R. C. C., provides that "the particular legatee can take possession of the thing bequeathed, or claim the proceeds or delivery thereof, only from the day the demand for the delivery was formed, according to the order hereinbefore established, or from the day on which that delivery was voluntarily granted to him."

It is admitted that there is no express bequest of the revenues accruing prior to delivery, that no judicial demand was made for the delivery, and that no corporeal delivery was made until September, 1873 ; but it is contended on behalf of plaintiffs that there was a constructive delivery by the executors, resulting from their payment of the net revenues for several years.

In answer to this the executors invoke a notarial agreement, dated twenty-seventh of August, 1873, between themselves and the legatees, by which the delivery was made upon the terms and conditions, "that the nature and extent of the rights of said legatees to the said revenues and annuity shall be left to a judicial decision in an amicable suit brought by said legatees for that purpose; and should the courts decide that said legatees are entitled to the said revenues, the amount of which is above fixed, or part thereof, then the payment already made as aforesaid shall be imputed thereto up to the amount, and any surplus of said payments shall be imputed to said annuity, in the event the court decides the said annuity to be due; and should it be decided that said legatees are not entitled to said revenues in whole or in part, but are entitled to said annuity, then the amounts so paid by the executors shall be imputed to the extinction of said annuity."

This clearly reserves the question of plaintiffs' right to the revenues, and waives any claim as to a constructive delivery from the payments as made by the executors, admitting that a constructive delivery can be made by executors. It follows, we think, that the provisions of the above article must apply, and that the revenues accruing before delivery can not be successfully claimed by the plaintiffs. This conclusion is supported by the terms and clauses of the will and codicils when construed together, and the further fact that the donation of the " Somerset estate," including this particular land, by the testator to John Perkins, Jr., was not finally revoked until in April, 1871. There are money legacies imposed by the testator upon the "Somerset estate" in general terms, and the "Somerset estate" is described by him as including the plantation bequeathed to the plaintiffs. The revenues of the whole estate were required to discharge those legacies, as those from the part so bequeathed to plaintiffs were not expressly exempted. And the legal title of the whole being in John Perkins, Jr., until judicially revoked in 1871, the delivery could not have been made to the plaintiffs prior thereto. We think the District Judge decided correctly.

Judgment affirmed.

Rehearing refused.